**Dated: February 19, 2016**

**The following is ORDERED:**





Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

In re:                                    )
                                          )        Case No. 15-13970-JDL
MICHAEL L. CALLOWAY, SR,                  )        Ch. 13
                                          )
                    Debtor.               )

**MEMORANDUM OPINION AND ORDER DENYING DEBTOR'S APPLICATION
FOR ORDER FOR CONTEMPT CITATION AND MOTION FOR SANCTIONS**

This matter comes before the Court for consideration, upon the *Emergency Aplication [sic] and Order for Contempt Citation and Motion Sanctions for Violation of Automatic Stay Attorney Misconduct* filed by Debtor on February 1, 2016, (the "*Motion*") [Doc. 38 & 39] and the *Response* thereto filed by Nationstar Mortgage LLC, Don J. Timberlake, Blake C. Parrott, Jim Timberlake, Gary D. Bear [sic], William Sullivan, and Baer & Timberlake, P.C. (collectively, the "*Respondents*") on February 15, 2016 [Doc. 40]. While much of the *Motion* is a rambling, stream-of-consciousness polemic against the Court, Debtor's mortgagee, Nationstar, the Respondents and others, the gravamen of the

*Motion* is that Nationstar, the *Respondents* and other named "defendants" violated the automatic stay imposed by 11 U.S.C. § 362(a) by proceeding against Debtor in a State court foreclosure proceeding.

By way of relief for the alleged breach of the stay, Debtor requests the Court without further notice or hearing find the named "defendants" (including the *Respondents*) in contempt of court and issue warrants to bring "the Defendants and all co-conspirators listed above before the Court for an initial appearance or arraignment". Debtor seeks damages in the amount of $92,492.53 (presumably the value of the house foreclosed upon and sold at sheriff's sale), unspecified loss of income, expenses, and reasonable legal fees (although Debtor has proceeded *pro se*), loss of "precious time from their personal and professional lives" and for stress and anxiety. Based upon the allegations of the *Motion*, the *Response,* the docket sheet and pleadings filed in this case and the related state court foreclosure case over which this Court may take judicial notice,[1] the Court makes this *Memorandum Opinion and Order* which will constitute its findings of fact and conclusions of law  pursuant to Fed.R. Bankr. P. 7052 and 9014.

## Statement of the Case

1.  On October 16, 2015, Debtor filed a *pro se* Chapter 13 voluntary petition.  The case was a " bare-bones" filing, with the schedules, statement of financial affairs, income

---

[1] *United States v. Ahidley*, 486 F.3d 1184,1192 n. 5 (10th Cir. 2007) ("We may exercise our discretion to take judicial notice of publicly filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."); *Adams v. Watts,* 2009 WL 5101759 (W.D. Okla. 2009) (Judge Friot) (taking judicial notice of the public records of the District Court of Comanche County available on the Internet); *Shoulders v. Dinwiddie ,* 2006 WL 2792671 (W.D. Okla. 2006) (Judge Cauthron) (court may take judicial notice of state court records available on the world wide web including docket sheets in district courts); *Stack v. McCotter,* 2003 WL 22422416 (10th Cir. 2003) (unpublished opinion) (finding state district court's docket sheet is an official court record subject to judicial notice under Fed.R. Evid. 201).

records and means test due to be filed by October 30, 2015. [Doc.1].[2]  On the date of the filing of the petition, Debtor filed an *Application to Pay Filing Fees in Installments*. [Doc. 3]. On October 19, 2015, the Court entered an order denying the application to pay in installments and making all payments due by October 30, 2015, upon penalty of dismissal of the case with prejudice and setting a hearing upon the same for November 10, 2015. [Doc. 5].

2.  Debtor paid the filing fees, and the hearing on the Court's order to consider dismissal of the case based upon a failure to pay the filing fees was stricken. [Doc. 8].

3.  Debtor failed to file his schedules, statement of financial affairs, income records and means test by the October 30, 2015 deadline.  On November 17, 2015, the Chapter 13 Trustee filed a *Motion to Dismiss with Prejudice* for Debtor's failure to file a plan, schedules and a valid credit counseling certificate. [Doc. 10]. A hearing on Trustee's Motion to Dismiss was set for December 8, 2015. [Doc. 11].

4.  On December 1, 2015, Debtor filed his *Objection to Motion to Dismiss.* [Doc. 12]. On December 7, 2015, Debtor filed a *Motion Objecting and to Continue/Reschedule Hearing* asserting that he was entitled to at least 33 days notice of the hearing on the Motion to Dismiss pursuant to Rule 3007.  [Doc. 17].[3]

---

[2]  This was Debtor's 6th bankruptcy filing.

[3]  Fed. R. Bankr. P 3007 is applicable to objections to claims.  It has nothing to do with any response time or extension thereof which was being sought by Debtor. Debtor's reliance upon the wrong rule in this instance is representative of the "fast and loose" way Debtor has played with proper bankruptcy procedure in this and prior cases.  Debtor mistakenly believes that his *pro se* status entitles him to disregard bankruptcy procedure.  Although *pro se* litigant's pleadings are generally held to less stringent standards than those of attorneys, they still must comply with the procedural rules and court orders.  See e.g., *Maus v. Ennis*, 513 Fed. Appx. 872, 878 (11th Cir. 2013); *Moton v. Cowart*, 631 F.3d 1337, 1340 n. 2 (11th Cir. 2011); *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994) ("Although civil litigants who represent themselves ('pro se') benefit from various procedural protections not otherwise afforded to the ordinary attorney-

4.   Debtor failed to appear at the December 8, 2015, hearing on the Trustee's Motion to Dismiss, and the Court granted Trustee's *Motion to Dismiss with Prejudice,* finding the debtor to be an abusive filer. [Doc. 18]. The *Order Granting Motion to Dismiss with Prejudice to Refiling* was entered on December 16, 2015. [Doc.26].

5.   On December 8, 2015, Nationstar filed its *Motion for Annulment of the Automatic Stay and Abandonment of Real Property* (the "*Motion for Annulment*") with regard to Debtor's non-residential house located at 1313 Rocky Point Dr., Edmond, Oklahoma. [Doc. 14].  At the time of the filing of *Motion for Annulment*, Nationstar filed an Application and obtained an Order shortening the time by which Debtor was to respond to the *Motion for Annulment* to five days, or by December 13, 2015. [Doc. 16].  A Notice of Hearing set the hearing on the *Motion for Annulment* for December 16, 2015. [Doc. 16].

6.   On December 10, 2015, Debtor filed his *Amented [sic] Objection to Order and Application for Annulment Stay and Abandonment and Voluntary Dismissal.* [Doc. 22].

7.   On December 16, 2015, the *Motion for Annulment came* on for hearing.  Counsel for Nationstar appeared, the Chapter 13 Trustee appeared and counsel for the Trustee appeared.  Debtor failed to appear. [Doc. 25; Doc. 32; Hearing Trans. 12/16/15,  pg. 3]. Notwithstanding Debtor's failure to appear, after hearing the argument of counsel, the Court denied the *Motion for Annulment.* [Doc. 27].

8.   On February 1, 2016, Debtor filed the *Motion* against Nationstar, the *Respondents* (five attorneys in the law firm representing Nationstar), the buyer of the house previously owned by Debtor and which was sold at foreclosure sale, and two banks

---

represented litigants, *pro se* litigants are not entitled to a general dispensation from the rules of procedure and court imposed deadlines.").

and their officers.[4]  In their *Response*, *Respondents* acknowledge that the State court hearing conducted on October 16, 2015,  at 11:00 A.M., and the resulting Order Confirming Sale entered the same date were in violation of the automatic stay; however, *Respondents* assert that they had no knowledge of Debtor filing bankruptcy less than an hour prior to the hearing, and that the violation of the automatic stay is therefore "technical" and does not entitle Debtor to any damages.

### Jurisdiction

The *Motion* "arises under" the Bankruptcy Code and is therefore a "core" proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334 and 11 U.S.C. § 362(h).  However, a preliminary matter which this Court must first address is whether it has jurisdiction to entertain the *Motion* notwithstanding the case was previously dismissed. "It is particularly appropriate for bankruptcy courts to maintain jurisdiction over § 362(k)(1) claims seeking damages for violation of the automatic stay because their purpose is not negated by dismissal of the underlying bankruptcy case".  *In re Johnson,* 575 F.3d 1079 (10th Cir. 2009); *Davis v. Courington (In re Davis),* 177 B.R. 907, 911-12 (9th Cir. BAP 1995); *In re John Richards Homes Building Co.*, 405 B.R. 192, 210 (E.D. Mich. 2009) (stating "there is much support for the proposition that bankruptcy courts retain jurisdiction over core proceedings beyond the dismissal or closure of the underlying bankruptcy case.").  In short, "the great weight of case authority supports the position that a § 362(k)(1) proceeding remains viable after termination of the underlying bankruptcy case".  *In re Johnson,* supra. at 1084; *Jones v. Boston Gas Co. d/b/a Keyspan Energy Delivery New*

---

[4] The *Motion* does not allege exactly why the banks and its officer are named as "defendants".  From pleadings in the State court foreclosure proceeding, it appears that the banks were involved in financing buyer's purchase of Debtor's property at the foreclosure sale.

*England (In re Jones)*, 369 B.R. 745, 748 (1st Cir. BAP 2007). Cf. *Cooter & Gell*, 496 U.S. 384, 110 S.Ct. 2447 (1990).  This Court has jurisdiction over this matter.

<u>**Discussion**</u>

By the *Motion*, Debtor seeks damages, contempt and sanctions against the named Respondents/defendants for violation of the automatic stay.  The automatic stay provides certain protections for a debtor in bankruptcy.  Among other activities, it stays the "commencement or continuation . . . [of an] action or proceeding against the debtor that was or could have been commenced before the [filing of the bankruptcy]," as well as the collection or enforcement of a prepetition claim. 11 U.S.C. § 362(a)(1) and (6).  Ordinarily, any action taken in violation of the automatic stay is void and of no force or effect, even when there was no  actual notice of the existence of the stay.  *In re Calder*, 907 F.2d 953, 956 (10th Cir. 1990); *In re Kline*, 472 B.R. 98 (10th Cir. BAP 2012).

Section 362(k)(1) provides that an individual injured by a "willful" violation of the stay may recover damages.  To establish a claim under § 362(k), the debtor must establish by a preponderance of the evidence that the creditor knew of the automatic stay and intended the actions that constituted the violation; no specific intent is required. *In re Johnson* 501 F.3d 1163 (10th Cir. 2007); *In re Kline*, supra.; *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 302 (5th Cir. 2005); *Knaus v.  Concordia Lumber Co. (In re Knaus)*, 889 F.2d 773, 775 (8th Cir. 1989).  Whether a party's action is a violation of the automatic stay is a question of law.  *Kline v. Deutsche Bank National Trust Co (In re Kline)*, 472 B.R. 98, aff'd 514 Fed. Appx. 810 (10th Cir.2013).

In the *Motion*, Debtor spends several pages stating, and restating, conclusory statements concerning the law relative to violations of the automatic stay. The problem,

6

however, is that Debtor never states a clear, detailed factual basis for his conclusion that the Defendants have violated the stay. The allegation that comes closest to a factual, basis for a stay violation (rather than a mere conclusory allegation) is contained in ¶ 19 of the *Motion* wherein Debtor alleges:

> "19. Jim Timberlake and the lawyers of Bear [sic] & Timberlake P.C. as counsel representing Nationstar Mortgage LLC violated the automatic stay when, with knowledge of the debtor's Chapter 13 bankruptcy filing attempted to sell debtor's property and have yet to cease in their endeavor."

That allegation is refuted by the record .

On the date of filing bankruptcy, October 16, 2015, Nationstar's state court foreclosure proceeding was pending. [Oklahoma County District Court Case No. 2010-7077]. A hearing on Nationstar's Motion to Confirm Sheriff's Sale was set for hearing that day, October 16, at 11:00 AM. [Case No. CJ-2010-7077, Doc.1030936672]. Debtor filed his bankruptcy Petition on October 16, 2015 at 10:11 A.M., 49 minutes prior to the scheduled hearing on confirmation of the sheriff's sale. [Doc.1]. Debtor did not notify Nationstar or its attorneys of the filing of the bankruptcy [recorded but untranscribed statement of Nationstar attorney Jim Timberlake at the hearing of December 8, 2015], and the state court judge proceeded to confirm the sheriff's sale at the hearing held at 11 o'clock on October 16, 2015. [Case No. CJ-2010-7077, Doc. 1030927903 ].[5]

Nowhere in his fifteen page *Motion* does Debtor state how or when Nationstar or the *Respondents* first received notice of the bankruptcy. Debtor acknowledges that "Nationstar is not listed as a creditor in debtor's petition", [ *Motion*, ¶ 18], and neither Nationstar nor the

---

[5] At the same time, the court entered an Order of Disbursement of the $90,000 which had been paid into the Office of the Court Clerk from the proceeds of the sheriff's sale.

7

*Respondents* are included on the mailing matrix filed with the petition. [Doc. 1]. In fact, only one creditor is listed on the matrix. While Debtor asserts that "there can be no doubt that Jim Timberlake and all of the above-mentioned had knowledge of the pending bankruptcy case", [*Motion*,¶ 17], there is absolutely no evidence that any of the Respondents/Defendants had notice of the bankruptcy at the time Nationstar obtained the October 16, 2015, Order Confirming Sale.

Regardless of the fact that Nationstar and *Respondents* had no knowledge of the filing of the bankruptcy, the Order Confirming Sale entered after the filing of bankruptcy was void. *In re C. W. Mining Co., 749 F.3d 895* (10th Cir. 2014); *In re Calder*, supra; *In re Kline,* supra. Nationstar subsequently moved to vacate the Order. On February 11, 2016, the State court entered its Order Vacating Order Confirming Sale filed October 16, 2015, in which the court made a specific finding as to Nationstar and its counsel not having actual knowledge of the filing of the bankruptcy at the time of the hearing on the confirmation of the sheriff's sale:

> "3. The Court, Plaintiff and its counsel had no actual knowledge or notice that the Defendant, Michael L Calloway, had filed a Chapter 13 bankruptcy prior to the October 16, 2015, at 11:00 AM hearing, on the morning of October 16, 2015.
>
> 4. Because Defendant filed bankruptcy prior to the October 16, 2015, hearing, the Order Confirming Sale filed herein on October 16 , 2015, is void.
>
> IT IS THEREFOR ORDERED, ADJUDGED AND DECREED by the Court that the Court, Plaintiff and its counsel had no actual knowledge or notice that Defendant had filed a Chapter 13 bankruptcy prior to the October 16, 2015, at 11:00 AM hearing."

[*Response,* Exhibit 1, Doc. 40-1].

The state court docket sheet does not reflect that Nationstar or its attorneys undertook any affirmative action to continue to prosecute the foreclosure action between

the filing of the bankruptcy and the hearing on the motion to confirm sale, both on October 16, and December 18, 2015, two days after the entry of this Court's order dismissing the bankruptcy, when Nationstar filed its *Renewed Motion to Confirm Sale*. [State Court Doc. 1031582392].[6]

By that time, December 18, the dismissal of the bankruptcy had operated to lift the automatic stay by operation of law. 11 U.S.C. § 362(c)(2)(B) (automatic stay continues until the earliest of the time the case is closed, the time the case is dismissed or a discharge is granted or denied). The automatic stay and the protection it offers terminates immediately upon dismissal of a bankruptcy case. *In re Kline*, 472 B.R. 98, 103 (10th Cir. BAP 2012). A creditor is therefore free to take action to enforce its rights in a debtor's assets the moment that dismissal order is entered. *Id*; *Shaw v. Ehrlich*, 294 B.R. 260, 274 (W.D. Va. 2003). Thus, any action taken by Nationstar or the other *Respondents* in the State foreclosure proceedings after December 16, 2015, as a matter of law could not constitute a violation of the automatic stay. Debtor continues to assert that *Respondents* have and are continuing to violate the automatic stay, but Debtor never addresses the fact

---

[6] This Court notes that while the state court docket sheet does not reflect Nationstar took any affirmative action in the foreclosure while the stay was in effect, Debtor continued to file numerous pleadings between the date of bankruptcy and the time of the lifting of the automatic stay on December 16, 2015. On December 16, 2015, in the State foreclosure case Nationstar filed a *Combined Response to All Pending Motion/Objections Filed by Michael L. Calloway as of December 15, 2015* [State Court Doc. 1031590236] and a *Notice of Hearing* setting for hearing five pending motions filed by Debtor, some filed pre-petition and some filed post-petition. [State Court Doc. 1031593052 ]. The automatic stay terminated by the entry on the bankruptcy docket sheet of the Order Dismissing Case with Prejudice at 12:20 PM on December 16th, 2015 [Doc.25, Notice of Electronic Filing]. The Court is not aware of the exact time on that date that Nationstar filed its state court pleadings, but even if Nationstar filed them before the stay was lifted, there would be no stay violation since the provisions of § 362 do not apply to a creditor protecting legal rights in proceedings initiated against them by the debtor. *In re Bryner*, 425 B.R. 601 (10th Cir. BAP 2010); *In re Financial News Network, Inc.,* 158 B.R. 570 (S.D. N. Y. 1993); *In re White*, 186 B.R. 700 (9th Cir. BAP 1995).

that as of December 16, 2015, the case was dismissed and the consequence of which was that the stay was no longer in existence. "While everybody is entitled to their own opinions, they are not entitled to their own facts." [7]  Debtor has no facts that substantiate his claims.

Actions taken without notice or knowledge on the part of a creditor of the commencement or pendency of the bankruptcy case nevertheless violate the stay, but the violation is merely "technical"[8]  and no damages can be awarded.  *In re Kline*, 424 B.R. 516, 524 (Bankr. D. N.M. 2010); *In re McMullen*, 386 F.3d 320, 330 (1st Cir. 2004) ("Absent such knowledge of the bankruptcy case on the part of a creditor, however, the violation is merely 'technical' and no damages are to be awarded"). Section 362(k) allows "an individual injured by any *willful* violation of a stay" may recover damages, including attorney's fees and costs.  In order to demonstrate a violation of § 362(k)(1), the debtor bears the burden of establishing by a preponderance of the evidence, that the creditor knew of the automatic stay and intended the actions that constituted the violation.  *In re Johnson*, 501 F.3d 1163, 1172 (10th Cir. 2007); *In re Gazzo*, 505 B.R .28 ( Bankr. D. Colo. 2014). Here, the record is clear, and as determined by the state court, Nationstar and the *Respondents* had no notice or knowledge of the bankruptcy at the time of the October 16, 2015, hearing on the motion to confirm sale.  Any action they took was not "willful" giving rise to Debtor's claim for damages.

In addition to his claim for damages under § 362(k),  Debtor also seeks the Court to hold Nationstar, the *Respondents* and the other defendants in contempt. Debtor

---

[7] United States Senator from New York, Daniel Patrick Moynihan.

[8] "Technical violation of the stay" as used by this Court means a stay violation committed without knowledge or notice of the bankruptcy case in which the stay was violated. *In re Kline*, 424 B.R. 516, 523, n.13 (Bankr. D. N. M. 2010).

requests that the Court do so and issue bench warrants for the *Respondents'* arrests *sua sponte* "as a matter of public interest and to avoid further waste of judicial resources and time . . .". [*Motion*, pg. 14]. In civil contempt proceedings the Due Process Clause requires that the defendant be given reasonable notice and an opportunity to be heard. *FTC v. Kuykendall*, 371 F.3d 745, 754 (10th Cir. 2004) (en banc). A finding of civil contempt is proper where (1) a valid court order existed; (2) the defendant had knowledge of the order and (3) the defendant disobeyed the order. *United States v. Ford*, 514 F.3d 1047,1051 (10th Cir. 2008); *Reliance Ins. Co. v. Mast Construction Co.,* 159 F.3d 1311, 1315 (10th Cir.1998). Unlike the burden of proof with regard to a violation of the automatic stay or discharge injunction, the burden of proof for a finding of civil contempt is clear and convincing evidence. *FTC v. Kuykendall*, 371 F.3d 745 (10th Cir.2004).

The Court has already found that *Respondents* did not continue to prosecute the State foreclosure proceedings with knowledge that the stay was in existence, and thus no willful violation of the automatic stay occurred entitling Debtor to damages under § 362(k) where Debtor had a lesser, preponderance of the evidence, burden of proof. In seeking contempt Debtor has an even higher "clear and convincing" burden of proof to show that the *Respondents* had acted with knowledge that the bankruptcy had been filed and the stay was in effect. This is a burden which Debtor has not, and cannot, meet. Accordingly,

**IT IS ORDERED** that Debtor's *Emergency Aplication [sic] and Order for Contempt Citation and Motion Sanctions for Violation of Automatic Stay Attorney Misconduct* [Doc. 39] be and the same is hereby **DENIED** as to all "Defendants" named in said *Motion*.

# # #

11